# E. C. Wilkinson *v.* Wiley Davis's Administrator.

A bond with the following condition was held to be void for uncertainty: " The condition of this obligation is such, that if the said Wiley Davis, his heirs, executors or administrators, shall make or cause to be made to the said Edward C. Wilkinson, his heirs or assigns, a good or valid title to five sections of land, claimed by said Davis as the assignee of certain Choctaw Indians, who claim by virtue of the fourteenth article of the treaty made between the Choctaw tribe and the United States, at Dancing Rabbit Creek, whensoever the said Davis shall obtain a title to any of said lands himself, or when any other person shall obtain a title for his use. Then this obligation to be void, otherwise to remain in full force and virtue."

A promissory note given in consideration of a title bond, with the above condition, was held to be void, and the note and bond decreed to be cancelled.

When a party representing himself as " the assignee of certain Choctaw Indians, who were entitled to certain lands by virtue of the fourteenth article of the treaty made between the Choctaw tribe of Indians and the government of the United States, at Dancing Rabbit Creek, in the state of Mississippi," sold the said land, and it afterwards appeared that he was not the assignee of said Indians, but had contracted to become their assignee upon certain conditions, which he had not complied with; held, that this was a fraud, and the contract for the sale of said land was decreed to be rescinded.

Every contract for the conveyance of land must define its identity and FIX ITS LOCALITY, or there must be such description of the land that parol evidence will readily point to its locality and boundaries.

This bill was filed to enjoin proceedings at law, and to rescind the contract on which the same was based.

The bill states, that on the 28th day of January, 1837, Wiley Davis represented himself to be the assignee of the Indian title to five sections of land, which the Indians claimed by virtue of the treaty of Dancing Rabbit Creek, and proposed to sell the same to complainant; and that complainant, trusting to these representations, which he believed to be true, became the purchaser of the said five sections for the sum of $4,800, for which he executed his note, and that Davis gave a bond to convey to him as soon as he obtained the title to the same, or whenever any person for his use got title.

5*

It states that these representations were untrue ; that said Davis was not the assignee of the Indian title, but that John Johnson was the purchaser of a large number of the Indian claims, and agreed to let Davis have a limited portion of them, if he would advance money enough to Johnson to enable him to secure the titles to the land from the United States; that Davis never did advance the money, or comply with the conditions on which alone Johnson agreed that he should have an interest in the same.

The bill states that Davis, on the same day he sold to complainant, sold to several other persons a large number of sections of land, which he claimed to hold as assignee as aforesaid; that he was not the assignee as he stated, and that he fraudulently and falsely misrepresented the facts, and thus imposed upon complainant.

It also states, that when Davis sold the said land it was held by persons who claimed adversely to his claim, and that the sale is therefore void; that Davis is dead, and that the defendant administered upon his estate; that suit upon the note has been commenced in Yazoo county by defendant. It prays an injunction of the suit, and at the final hearing a perpetual injunction, and a cancellation of the note. It also states the insolvency of Wiley Davis' estate.

The answer of the administrator denies all fraud or misrepresentation by intestate, and calls for proof; and states his belief that complainant knew the situation of intestate's title.

It states, that a number of Indians applied to the agent of the United States to register their names under the treaty referred to in bill, in order to entitle them to a grant to the land; that the agent failed to do so, and that the lands which the Indians were entitled to were sold improperly, and that Davis *purchased* or *contracted* for a large number of these claims, which he located on more than five hundred sections of land, and that the intestate had a much greater interest in the land than he sold; and that intestate's ultimate title depended upon the action of Congress, and that no final action by that body has yet been had. It admits that the note mentioned in the bill was given for the five sections as stated in the bill, but that complainant was to pay $1900 more if Congress confirmed the claims. It neither admitted nor denied

the adverse holding charged in the bill.   Exception was taken to it on that account, which was sustained, and time given to answer; no answer was filed, and a *pro confesso* has been taken as to the allegation that the lands were adversely held when sold.

The allegations of the bill were fully sustained by depositions on the part of the complainant.   The defendant introduced no evidence to corroborate his answer.

WILLIAM YERGER for complainant.

The injunction must be perpetual, and the contract rescinded.

First. Because of the fraudulent misrepresentations of Davis.

Second. Because of the illegality of the sale of the land which was adversely held.

Thirdly. Because of a failure of consideration, produced by the subsequent rescission between Johnson and the administrator.

It is a well settled rule of equity that fraud vitiates every contract, and where one party has been deceived by the fraudulent concealment or misrepresentation of any material part of a contract, equity will relieve by rescinding the contract.   1 Story Eq. 200, et. seq.   4 Yerg. 375.   3 Peters R. 210.   13 Ib. 26.   1 Dev. Eq. R. 411.   Sugden on Sales, 26.

2. A sale of lands in the adverse possession of another, is void by the common law, it being *malum in se.*   1 Hawk. Pl. C. 470; 1 Plowd. R. 88; 2 Just. 563, 564; 7 Bing. 369; 8 John. R. 479; 1 Pick. Dig. 133–4–6; 5 How. 413; 4 Kent's Com. 448, 449; 5 Pick..R. 348; 2 Story's Eq. 312, 313; 9 Johns. R. 55; 2 Johns. Cases, 58:   And the sale being void, the notes given for the purchase money are void also, being against public policy.   4 Kent's Com. 449, note and cases cited; 2 Story's Eq. 312, 313; 2 Johns. Cases, 58; Green *v.* Robinson, by High Court, Jan. term, 1840; 2 Swanston's R. 167; 3 Dana, 201; 1 Story's Eq. 296 to 300; 2 Johns. Cases, 58, 417; 1 Rand. 76, 11.

Upon the third point I need not cite authorities.   The administrator being unable to comply with his contract with Johnson, had the right to rescind; having done so, he places it forever out of the power of Davis's heirs to comply with the contract with Wilkinson.   1 A. K. Marshall, 434; 4 Cranch, 137.

W. R. MILES for complainant.

First. The position is believed to be correct, that an *actual* conveyance of *land*, of which there is *adverse possession*, was void even before the passage of the act of Henry VIII. against granting pretended titles. For the deed could not operate as a feoffment, as entry could not be made to release seizen: nor could the use be executed to the possession, so as to enable the grantor to convey by virtue of the statute of Henry VIII. in regard to uses.

Second. It is especially so since the act of Henry VIII. in regard to pretended titles. For, although that statute does not, in *terms*, avoid the deed, but is merely penal, yet when an act of parliament forbids an act under a penalty, every contract made for such matter is a void contract. See 1 Taunt. R. 136; 1 Rand. 98; for a penalty implies a prohibition. Here neither the grantor nor any ancestor was ever in possession, nor any purchaser from whom he claims.

Third. This, however, is not an actual conveyance, but a covenant to convey, &c. I admit that equity will sometimes enforce, or *has* enforced, a covenant to convey a possibility when it arises; but not in such a case as this—for,

1st. It will be upon condition that the party seeking the enforcement of the contract has first done all it was incumbent on his part to perform. Here he not only has not done it, or offered to do it, but, as the proof clearly shows, that he never can do it.

2d. And besides, the contract is void, as fraudulent.

3d. Besides, a court of equity will not decree the performance of a contract for the conveyance of a possibility, until that possibility *exists*—or, more properly, actually *vests*—for, how could it?

But it may be said that the covenants to *pay* and to *convey* were *independent*. *It is admitted.* But the court will not put the complainant to his defence at *law*, for the contract was *void* in its *inception; void* for fraud; void also as against the policy of the law. But, if the contract were not void, and a recovery could be had at law, it is clear that, under the covenants in the deed, which complainants would have a right to insist on, by the terms of the contract, complainants could recover from Wiley Davis's administrator the amount of the note now in suit. And thus, by taking cognizance of the matter fully here, multiplicity of suits

E. C. Wilkinson *v.* Wiley Davis's Administrator.

and circuity of remedy will be avoided, and great *injustice too;* since it is alleged in the bill, and not contradicted, that *the estate of Davis is utterly insolvent.*

Davis's representations as to facts, which turned out to be untrue, whether founded in *mistake* or *fraud,* afford ground for relief, and even for a rescission of the contract. See 13 Pet. Rep. 30, Smith *v.* Richards. For the complainant had no means of ascertaining whether they were true or not, and seems to have confided entirely in Davis's representations.

MARSH and AYRES for defendant.

The CHANCELLOR.

There are several features of this case upon which the injunction must be perpetuated and the contract rescinded.

The bill sets up that W. Davis fraudulently represented himself as the assignee of certain Choctaw Indians, who were entitled to five sections of land under the 14th article of the treaty of Dancing Rabbit creek. That he so represented himself is shown by the terms of his own bond, and by the testimony of Halsey, who says Davis, in fact, had no assignment from any Indians to his knowledge, except for a half section of land; that he had some contingent right, by virtue of a sub-contract with Halsey and one Johnson, but that the contract with Johnson was never complied with by Davis, and was finally rescinded by his administrator. Johnson also proves that he never knew of any assignment of an Indian title to W. Davis. Robert O. Patrick swears "that he knows that Davis had no shadow of right or title to any Choctaw lands, as assignee, from the Indians, either in law or equity; that Davis admitted to him he had no claim until certain conditions were performed by him, which were never performed. There is no proof that Davis was the assignee of a solitary Indian title, except some negative parol proof, which is inadmissible. The defendants should have adduced their written evidence, if any, of the assignment of title to five sections of land from the Choctaw Indians. It was incumbent on the defendants to show some title or right or contract with the Indians as the basis of their intes-

tate's bond, especially as the defendants have proved negatively, as far as it could be proved, that Davis had no title.

But I think the complainant's bill may be sustained upon a ground not mentioned on the trial. The contract of sale to Wilkinson recites that the five sections sold were a part of thirty sections already located, but at what point, what are the numbers of the sections, townships and range, is entirely omitted; nor is this defect cured by the bond for title: That gives no other designation of the land than the vague, indefinite and uncertain description of five sections of land claimed by Davis as assignee of certain Indians, claiming under the 14th article of the Dancing Rabbit creek treaty.

Are not the bond and contract void for uncertainty? Every contract or deed for the conveyance of land must define its identity and fix its locality, or there must be such description of the land as, by the aid of parol evidence, will readily point to its locality and boundaries. But if the contract is void, by reason of the uncertainty in the description of the subject matter, parol evidence is not admissible to supply the omission. Sug. on Vendors, 114–15; 4 Mass. R. 205; 16 Mass. R. 86; 1 Pick. 31.

It is clear that a bill for the specific performance of this contract could not be sustained. What sections out of the thirty, supposing them to be described, would the court decree to be conveyed? Wilkinson could maintain no action at law upon it for damages. The rule in such cases is, the value of the land to be conveyed at the time when the conveyance should be made. But what land would the proof be directed to, to prove its value? The contract gives no clue.

The injunction must be perpetuated, and the contract rescinded.